**Irving B. KAHN and Peter G. Levathes, Appellants,**

v.

**Abraham MASSLER, James Wilson, Glassy Finish Process Company, and Bestway Products, Inc.**

**No. 11976.**

United States Court of Appeals Third Circuit.

Argued Dec. 18, 1956.

Decided Feb. 12, 1957.

Charles C. Kieffer, Washington, D. C., (Thomas J. Brogan, Jersey City, N. J., Joseph Zorn, Port Chester, N. Y., on the brief), for appellants.

Frank L. Bate, Newark, N. J. (Harold H. Fisher, Frederick B. Lacey, Shanley & Fisher, Newark, N. J., on the brief), for appellees.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of New Jersey. The trial judge granted, upon motion, an involuntary dismissal at the close of the plaintiffs' case under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C. The district court felt itself bound by the *dictum* expressed by this Court in Ettore v. Philco Television Broadcasting Corporation, 3 Cir., 1956, 229 F.2d 481, 484, to the effect that the evidence should be considered in the light most favorable to the plaintiff. D.C.D.N.J.1956, 140 F. Supp. 629, 632. In the Ettore opinion the court had in mind Fed.R.Civ.P. 41 (b) as it was prior to the 1946 addition. The effect of the 1946 addition to Rule 41(b) did not have to be decided under the circumstances of the Ettore case and we need not examine the addition here. The effect of the 1946 addition to Rule 41(b) has not been decided by this Court but see 5 Moore, Federal Practice, Section 41.13(4), p. 1045 (2 ed. 1951), and Allred v. Sasser, 7 Cir., 1948, 170 F.2d 233, 235.

The theory of the plaintiffs' case here, as the trial court saw it, upon explanation by the plaintiffs' counsel, "is that based on the nature of the parties' conduct the court must conclude that the relation of plaintiffs and defendants was that of joint venturers whose legal duties to one another have been wrongfully violated by defendants." Id. 140 F.Supp. at page 641. The court reached the conclusion that the evidence failed to support the theory and dismissed the case after a full statement of the facts and discussion of the law. Now the plaintiffs claim that the trial judge too narrowly interpreted their theory of the case and that his conclusion was, therefore, erroneous.

■ This litigation was begun in a state court in New Jersey and removed to the federal court because of diversity of citizenship. The operative facts occurred in New York and New Jersey. The trial judge correctly held that he should take the law as a New Jersey court would take it, including New Jersey local law where applicable and New Jersey conflict of laws rules where reference was required to the law of New York. He found no difference in the law of the two states on the legal theories involved in the plaintiffs' presentation. The appellants here do not question his statement of the law.

■ The determination of the case, therefore, must turn upon the examination of the facts to see just what happened between the parties. Plaintiffs' appendix gives us very little of the record even though they are the appealing parties. That deficiency the appellees have supplied.

The plaintiffs offer us a quotation from our own opinion in Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 1953, 206 F. 2d 144, 145, and other cases talking similar language to the effect that one may not take advantage of relationship of trust and confidence to do pecuniary harm to another. 4 Restatement, Torts § 757, pp. 6, 7 (1939), is likewise cited. We have no disposition to depart from the law shown in these statements and quite recognize the growing trend toward the requirement of a higher standard of commercial morality. Cf. Edmond Cahn, The Moral Decision: Right and Wrong in the Light of American Law (1955).

The trouble with this appeal is that the plaintiffs' case, when read through from end to end, does not support a theory on which recovery can be had. The findings of fact were set out in full by the trial judge and no object would be served by filling up pages of print to detail them again. We repeat only that part which shows why we think the trial judge was right.

The story has its beginning in November, 1946. Mr. Kahn and Mr. Levathes were both employed by Twentieth Century Fox. In November, the two during a lunch hour went to a jeweler's shop to pick up or look at a Christmas present Mr. Levathes was purchasing for his wife. It was a gold record about two inches in diameter. Mr. Levathes told Mr. Kahn, "it plays, 'I Love You, I Love You'." Mr. Kahn was "intrigued." He and his friend began to consider commercial possibilities for such a record not made of gold, but cheap enough to attain quantity distribution. When the two talked they expressed the view that if the thing worked it would be "terrific" and certainly "unique." These men knew about program-making and had contacts with musicians and other talent. They knew nothing about the problems involved in production of records—two-inch or any other kind. But Mr. Kahn's father suggested that, perhaps, injection molding might produce a playable two-inch record as it produces buttons.

Somewhere along here Massler and Wilson got into the picture. They were men who knew about production and knew nothing about program-making. Injection molding was not new and nobody in this lawsuit claims that it was. But it never had been successfully applied to the making of phonograph records. The small record also brought up separate problems. The ordinary phonograph must have some blank space between the spindle on which the record is put and the last groove on the record, for the fidelity of sound reproduction becomes less as the playing arm gets close to the spindle. The long examination of the witnesses at this trial giving the course of affairs over the months following the visit to the jeweler shows pretty clearly what Messrs. Kahn and Levathes had in mind. It was to try to find a way to produce, at a price which would be interesting to possible buyers, one of these very small records that would play. This is shown in ever so many details. One is the making of a mold for producing discs. Another is the forming of Dinky Disk

Corporation. Another is trying to find or devise a cheap machine which would play these "Dinky Disks." Mr. Kahn himself, at the trial, proved a very intelligent witness. The reading of his examination and cross-examination leaves no doubt that the plaintiffs thought they had a marketable idea in this two-inch record. Mr. Kahn said forthrightly that they thought "Dinky Disks" would make a "lot of money."

All of this business of conferring, talking to prospective customers for the little discs and dreaming of future profits took time. Eventually Mr. Skouras, plaintiffs' superior, told them that while he had no objection to outside activities Twentieth Century Fox was entitled to more of their time and thought than it was getting. So the plaintiffs gave a "license" to two men named Weiss and Brown and got from them $10,000 for it. Most of this money went to pay off advances which defendants and others had made for experimental work with the little discs. Kahn and Levathes each had $1,141.69 left when the license was paid for and production loans discharged. But they were to get from the licensees a share in future profits.

No orders for two-inch discs were ever filled. There were no sales. This golden dream, like many another rainbow with a pot of gold at the end, faded and died.

The licensees and the defendants continued business operations. Weiss seems to have disappeared from the picture rather early. Brown got in touch somehow with the firm of Simon and Schuster. They were interested in producing a small sized record for children. It was not a two-inch record but a six-inch one. Brown did some business with them but relations seemed to be highly unsatisfactory because Brown's talents evidently did not lie in the field of organizing production and figuring costs. Simon and Schuster ended up doing business with Massler and his corporation in a successful venture for a record to accompany that firm's "Golden Books." This seems to have gained some success.

We think the plaintiffs contributed nothing to this business through ideas or anything else. It involved no breach in trust and confidence with them in any way. It is not unnatural that their venture having proved unsuccessful, they would look with envious eyes upon another one which had succeeded. But the evidence simply will not support their claim.

The judgment of the district court will be affirmed.