PENN–TEXAS CORPORATION, and Ernest Stroheim, Plaintiffs-Appellants,

v.

Robert H. MORSE et al., Defendants-Appellees.

Henry L. GARTMAN, Intervening-Plaintiff-Appellant,

v.

Robert H. MORSE et al., Defendants-Appellees.

Nos. 11694, 11740, 11750.

United States Court of Appeals Seventh Circuit.

March 21, 1957.

W. McNeil Kennedy, John R. Whitman, Willis S. Ryza, Barnet Hodes, George L. Siegel, G. Gale Roberson, J. Herzl Segal, Chicago, Ill., for plaintiffs-appellants, Penn-Texas Corp. and Ernest Stroheim.

Owen Rall, Gerhard E. Seidel, Chicago, Ill., Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel, for intervening plaintiff-appellant.

Albert E. Jenner, Jr., Edward E. Lynn, Charles J. O'Laughlin, Charles M. Price, Chicago, Ill., Johnston, Thompson, Raymond, Mayer & Jenner, Chicago, Ill., of counsel, for appellees.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

After thirteen days of trial plaintiffs and intervenors failed in establishing any right to equitable relief and the trial judge, correctly, we think, allowed a motion under Rule 41(b) Federal Rules of Civil Procedure, 28 U.S.C.A., dismissing the complaint on the merits for want of equity. That final decree (entered February 29, 1956), and some of its derivative aspects, is now before us on plaintiffs' appeal and that of the intervenor, Gartman.[1]

Claiming to be common stockholders of the defendant Fairbanks, Morse & Co., an Illinois corporation, plaintiffs Penn-Texas Corporation and its financial vice-president-director, Ernest Stroheim, commenced the proceeding below against Illinois Fairbanks, Morse and each of its nine directors to enjoin the proposed issuance of roughly 169,500 authorized unissued common shares of that Corporation to Canadian Fairbanks, Morse Co., Ltd.,[2] and to some interests referred to as the "Mailman Group" in exchange for shares of common stock of

---

1. There were twelve intervenors below and only Henry L. Gartman appealed the final decree. Defendants' motion to dismiss Gartman's appeal was taken, by us, with the case and our affirmance in case number 11740 disposes of that motion.

2. A Canadian corporation, not a party to this litigation.

Canadian Locomotive Co., Ltd.,[3] on a share for share basis. Plaintiffs also sought to have a certain by-law, of the corporate defendant declared invalid. Various members of the Morse family, joined as defendants, own stock in Illinois Fairbanks, Morse and simultaneously hold considerable stock in Canadian Fairbanks, Morse Company, Limited, and Canadian Locomotive Co., Ltd. Interlocking directorates in the persons of several Morses exist among those three corporations.

The short of this case is simple enough. Plaintiffs assert standing as stockholders in Illinois Fairbanks, Morse in order to block an exchange of stock which plaintiffs claim would solidify domination by, and perpetuation in power, of the Morse family in the corporate trio and that the Morses would profit from the exchange in violation of their fiduciary relationships. By embedding the proposed exchange in a setting of family stockholders and interlocking directorates, plaintiffs would persuade us that the proposed exchange of stock is tainted enough for equitable relief. That situation is implemented by an elusive set of contentions predicated upon alleged disparity in the stocks to be exchanged.

Before going further, it is appropriate to mention plaintiffs' attack on the findings of fact filed below. We are asked to disregard them because they: (1) are condemned by plaintiffs as clearly erroneous and, (2) were prepared by attorneys for the defense. After carefully reading all of this unduly prolix record, we think the penetrating statements made by the district judge from the bench display a keen and accurate appraisal of some critical defects manifested by plaintiffs' evidence and a sure grasp of the realities spread before him, all of which is incompatible with the tenuous suggestions, about the findings he entered, now sponsored by plaintiffs in seeking reversal; thus among other things, the trial judge said:

"I don't know from the evidence here who the real party plaintiffs are. I don't know whether it is Francis I. du Pont & Company, the brokers, or some bankers behind them, or whether it is Charles H. Morse, Sr. I doubt that it is he and his family. I think he has just been smart enough to see a chance to make three or four hundred thousand dollars right quick under the circumstances.

"As I see it from the record of the evidence introduced here, he and his family have been very smart and very cunning to seize an opportunity to make probably a half million dollars on the deal. Naturally he doesn't care anything about continuing his efforts in the matter. He has got what he wants primarily, it would seem to me, so naturally he wouldn't be a named plaintiff.

"Now in summarizing my viewpoint of this case, I am not at all satisfied with the title of the plaintiffs. The intervening petitioners showed their title, and I have no quarrel with most of that. It was done and properly done.

"But whether or not the Penn-Texas Corporation and Mr. Stroheim are the real owners of this stock, I have grave doubt. It looks like to me they have got it pyramided, one on top of the other, and I don't know how many kinds of loans may be in the background. It looks like a conspiracy of some type or other to me to raid the stock market. It looks like to me, from the evidence that I have heard, a slugging operation, and I am not going to hesitate to tell you that this court of equity is no place for such types of action, in my judgment, and I don't want to

---

**3.** This Canadian corporation, not a party to these proceedings, is in the business of buying and selling locomotives. On January 11, 1956 it had issued and outstanding a total of 189,596 shares of its authorized 250,000 shares. Illinois Fairbanks, Morse owned 40,000 shares, Canadian Fairbanks, Morse 20,000 shares, and the Mailman Group owned approximately 50,000 shares.

see another case like this in my court.

"There is no damage shown. There is no illegal act shown. There is no abuse shown. There is no fraud charged or shown, and the title is seriously questioned. There is no act committed or threatened that a court of equity should in any way entertain." [4]

We, on the other hand, have discovered several statements in the parties' briefs that are without overwhelming support in the transcript of record. For example, plaintiffs tell us that:

"Nowhere in their brief do the defendants challenge the clear and uncontradicted evidence of the defendants themselves recited on pages 12 to 14 of our principal brief, which is epitomized by the *admission* of R. H. Morse, Sr. that one of the reasons for the issuance of the stock was to place it in the hands of those 'who would vote such shares for the perpetuation of the present management.'" (Penn-Texas reply brief, p. 11. Italics added)

Yet page 901 of the record, to which plaintiffs cite us, discloses the following relevant part of the actual testimony given by Mr. Robert H. Morse, Sr. when called as plaintiffs' witness:

"Q. Was not the purpose of the exchange the placing of the shares of Illinois Fairbanks, Morse in the hands of persons or corporations who would vote said shares for the perpetuation of the present management? A. I wouldn't say that was the sole reason.

"Q. Was it one of the reasons? A. I would be very foolish if I didn't consider it that way, to not try and get people who were friendly with the management in the company.

"The Court: Mr. Morse, if you answered otherwise I wouldn't consider your testimony worth very much."

Judge Lindley, speaking for this court in Gary Theatre Co. v. Columbia Pictures Corporation, 7 Cir., 1941, 120 F.2d 891, 892, said: "Under Rule 41(b) the judgment, supported by findings, was an adjudication upon the merits, inasmuch as defendants moved for dismissal upon the ground that, upon the facts and the law, plaintiff had shown no right to relief. Consequently our question is whether the findings are supported by the evidence. Under Rule 52(a) we can not set them aside unless they are clearly erroneous, and, by the same token we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses." Defendants' motion interposed below, and the allowance of it, brings the present appeal squarely within the ambit of the quoted passage.

Relying heavily on Winger v. Chicago City Bank & Trust Co., 1946, 394 Ill. 94, 67 N.E.2d 265 based upon transactions engaged in by directors of an Illinois insurance company, these plaintiffs insist that equity raises a presumption against the validity of the proposed exchange, accordingly contending the district judge committed error by holding that the burden of proving fairness was cast upon plaintiffs. But that argument loses all its vitality when a canvass of this record shows an absence of any evidence from which the presumption could arise and remain undiluted. Plaintiffs called several of the key defendant directors as witnesses, counsel for both sides examined them. Even if the presumption operated in full vigor the plaintiffs' evidence, in the trial judge's view, soon dissipated it. At best the alleged error was harmless.

Allred v. Sasser, 7 Cir., 1948, 170 F.2d 233, 235 was terminated by allowing a motion to dismiss and the appellant contended "that the Court should have limited its consideration of the evidence to the narrow limits applicable to the consideration of the evidence in a jury case upon a motion by

4. Tr. 1174–1175.

the defendant for a directed verdict at the close of the plaintiff's case." But we rejected appellant's contention saying: " * * * under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., upon a motion to dismiss at the close of the plaintiff's case, the trial court determines the facts without being thus limited and must weigh and evaluate the evidence." We adhere to that latter statement now and point up still another part of Allred v. Sasser, supra, relevant to the present appeal:

> "In this case the trial court was the trier of the facts, and in considering the evidence was not bound to view it in a light most favorable to the plaintiff, with all attendant favorable presumptions, but was bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as he believed it entitled to receive * * * citing."

■■ After evaluating the decision of the district judge, we have found it follows as a matter of law from the facts stated as its basis and that facts so stated are more than amply supported by the evidence contained in the record. Apparently in order to escape our repetitive explanations of the scope of judicial review these plaintiffs would have us disregard the findings of fact. We decline. The challenged findings are not clearly erroneous. We think the factual basis for the ultimate conclusions arrived at by the district judge is clearly manifested by the record, regardless of who composed the words and phrasing entered below. "The trial judge," we pointed out in Sun Life Assurance Co. of Canada v. Stacks, 7 Cir., 1951, 187 F.2d 17, 20, "has the function of finding the facts, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which he considers most reasonable, and he has the inherent right to disregard the testimony of any witness when he is satisfied that the witness is not telling the truth or her testimony is inherently improbable due to its inaccuracy, uncertainty, or interest or bias." See also: West v.

Schwarz, 7 Cir., 1950, 182 F.2d 721, 723; Norwich Union Indemnity Co. v. Haas, 7 Cir., 1950, 179 F.2d 827, 831–832; Rule 52, Federal Rules Civil Procedure, 28 U.S.C.A.

Despite our criticism of findings of fact prepared by counsel who prevailed in Process Engineers v. Container Corporation, 7 Cir., 1934, 70 F.2d 487, 489, from which the attorneys for Penn-Texas quote at length, this court affirmed the decree of dismissal entered against Process Engineers. Nothing said in that opinion compels a reversal here. See: Schilling v. Schwitzer-Cummins Co., 1944, 79 U.S.App.D.C. 20, 142 F.2d 82. The following partial passage from Gaytime Frock Co. v. Liberty Mutual Insurance Co., 7 Cir., 1945, 148 F.2d 694, 696 epitomizes the factual situation now before us, where the sole question involved resolved about "the inferences and conclusions drawn from the evidence by the trial judge," who as we said, "had the primary function of finding the facts and choosing from among conflicting factual inferences those which he considered most reasonable. Under such circumstances our power is limited to a determination of whether those inferences and conclusions have any substantial basis in the evidence. If such a basis is present the process of judicial review is at an end * * * and the finding of the District Court must be accepted by this court * * * And even where there is no dispute about the facts, if different reasonable inferences may fairly be drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous."

Even upon stripping the findings now before us of all the aspects obnoxious to these plaintiffs, and studying their meticulous objections interposed to virtually all the findings of fact, we are unsatisfied that any sound legal reason exists for reversing the final decree appealed.

We think Penn-Texas, and the intervenor Gartman, each failed to discharge their respective obligations of supporting

the alleged claims of ownership of common stock issued by Illinois Fairbanks, Morse. To be sure that defendant-corporation issued a stock certificate to Penn-Texas some time prior to the trial, but surely the court could look to representatives of Penn-Texas and to Gartman, respectively, for proof of their ownerships at the date of trial. Who else would know better? It is ridiculous to keep the point of ownership esoteric by hyper-technical quibbling. The district judge, as we have shown, held great doubts about the "real owners" of the Illinois Fairbanks, Morse stock. That doubt, which might have been dispelled, stemmed from evidence relating to the Union Bank of Switzerland and Chase Manhattan Bank. These plaintiffs cannot select what they will reveal and then expect equitable relief. Strategy has its uses but full disclosure would have been more suitable before the chancellor below. We are neither misled by, nor do we misconceive, the flimsy argument suggesting a pledge of the stock.

The only firm fragment of plaintiffs' contentions lies in the fact that there was an exchange of stock proposed. But from then on their argument proceeds on an unproven premise. For they urge there is evidence establishing disparity in value of the stock to be exchanged. From that shaky scaffolding they would erect "personal interest, advantages, and profits of the dominant shareholders and directors, R. H. Morse, Sr. and R. H. Morse, Jr." Unmentioned, of course, is that absent such disparity in value between Canadian Locomotive Co., Ltd. and Illinois Fairbanks, Morse shares the argument tied to defendant's fiduciary duty crumbles. It is our opinion that the evidence, failing to disclose such an alleged disparity as would cut ground from under the findings, underscores the intellectual traps stimulated by varying concepts of value. Long ago, Mr. Justice Brandeis wrote that: "Value is a word of many meanings." Southwestern Bell Telephone Co. v. Public Service Commission, 1923, 262 U.S. 276, 310, 43 S.Ct. 544, 554, 67 L.Ed. 981. See also, I Bonbright, Valuation of Property, 12–39 (1937); Ill.Rev.Stats. 1955, chap. 32, par. 157.18, § 18. The proposed interchange of stock was, in our opinion, the result of directors' action not *ipso facto* void from the face of the evidentiary facts displayed by this record.

We are satisfied that this appeal pivots on a factual controversy with plaintiffs understandably stressing inferences favorable to their position. What we have said regarding the findings of fact cuts to the core of the case and disposes of it.

Plaintiffs' other points concerning the quorum at the director's meetings were in the province of the fact finder below and we will leave them undisturbed.

Intercorporate transactions are expressly authorized, and indemnification of directors are provided for under the by-laws of Illinois Fairbanks, Morse, and in the state of this record we perceive no sound legal reason for invalidating those provisions.

The final decree appealed and brought here for review in causes numbered 11694, 11740 and 11750 is affirmed.

Decree affirmed.