**Gene ROGGE d/b/a Sourdough Freight Lines, Appellant,**

v.

**Kenneth E. WEAVER, Howard M. Weaver and Ruth Weaver d/b/a Weaver Brothers; Weaver Bros., Inc., an Oregon corporation; and Harold Adams, Appellees.**

No. 91.

Supreme Court of Alaska.

Feb. 6, 1962.

Charles J. Clasby, of Collins & Clasby, Fairbanks, for appellant.

George B. McNabb, Jr., Fairbanks, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

Plaintiff's evidence presented a prima facie case aided by a presumption at the time he rested. The trial judge, sitting without a jury, was not persuaded that plaintiff had sustained his burden of proof. The question to be decided is whether involuntary dismissal under Rule 41(b) was properly granted at this point in the trial.

The complaint alleged that on or about March 10, 1952, an agent of defendants was operating a Mack truck towing a full trailer in a southerly direction on the Richardson Highway near mile post 49; that the agent so negligently operated the vehicles as to collide with an International tractor and semi-trailer being operated on behalf of plaintiff in a northerly direction,

resulting in damage to plaintiff's equipment in the sum of $8494.74 plus loss of use for an extended period to plaintiff's additional damage in the sum of $6000.00. In their answer defendants admitted that their agent was operating a Mack truck and trailer in a southerly direction at the place claimed by plaintiff and admitted that they collided with plaintiff's vehicles. Defendants denied the allegations of negligence and damage. In a first affirmative defense defendants alleged that the highway at the place of collision was covered with ice and snow; that their driver met plaintiff's driver on a curve where the view of the highway was obstructed by a cliff; that their driver was unable to see plaintiff's vehicle until they were approximately 70 feet apart; that in an effort to avoid a collision defendants' driver drove the right wheels of his vehicle against a rock bluff, making all of the highway unoccupied by defendants' equipment available to plaintiff's driver; that because of the snow and ice-covered condition and the narrowness of the highway, the vehicles collided, although defendants' driver at all times operated his vehicle in a careful manner. A second affirmative defense alleged that the collision was caused by the negligence of plaintiff's driver in proceeding at a reckless and dangerous rate of speed causing him to be unable to stop his vehicle upon seeing defendants' vehicle. Defendants did not pray for damages.

At the trial of the action, over eight years after its occurrence, only two witnesses were presented on behalf of the plaintiff. The plaintiff-appellant, Gene Rogge, testified that he arrived at the scene of the accident at approximately 8:30 a. m. on March 11, 1952, accompanied by the witness Walter Farmer, an employee; that he observed his tractor-trailer sitting alongside the right hand side of the road headed north; that the right front wheel of the tractor was suspended over the bank of the road about a foot; the trailer was lined out parallel with the road, but the tractor appeared to have been pushed slightly over the bank of the road; that the left side of the tractor cab was badly damaged and the front housing of the tractor was completely broken off by the rear wheel; that there was a big hole in the front left hand corner of the trailer. Rogge further testified that the trailer was sitting within six inches of the edge of an eight foot embankment on the right hand side of the road, facing north, and that the track marks of the right wheels of the trailer could be seen in the snow for a distance of 60 to 70 feet to the rear of the trailer; that the track marks of the right wheels could still be observed, according to the witness, because they were over in loose snow where the roadway had not been plowed out; but no tracks of the left wheels could be seen because they had travelled in hard-packed snow on the roadway; that the width of the road at the point where plaintiff's vehicle came to rest was approximately 20 feet. Counsel for the parties stipulated that the witness had been at the scene of the accident on numerous prior occasions and was familiar with the curve and the highway. The witness had himself driven similar equipment around the curve in question, was familiar with both pieces of equipment involved in this collision, and testified that in his opinion the vehicles should not have had difficulty in passing at the point where the collision occurred, so far as the road width was concerned. He further testified that in his opinion his tractor did not move over five feet after it was hit. A diagram illustrating all of the witness' testimony was prepared in court as plaintiff's Exhibit 12.

The witness Farmer testified that the tractor and trailer were lined up along the berm of the highway; that the right front wheel of the tractor was off on a berm of snow, with the drivers of the tractor on the roadway. This witness substantiated appellant Rogge's testimony on damage to some extent, adding that the left front wheel of the tractor and one of the steering tie rod ends was broken. He stated that the road was wide enough for two vehicles to pass, in his opinion.

After plaintiff had rested, counsel for defendants announced that he had no intention of calling any witnesses and moved for

judgment for the defendants. The motion was granted and before us is the question of the sufficiency of plaintiff's evidence under the rule.

The question is new to this court, but since the rule involved is identical with Federal Rule of Civil Procedure, rule 41 (b), 28 U.S.C.A., we do not lack for a helpful source of precedent.

The federal history of that portion of the rule which concerns us here reveals that prior to 1946 a difference of opinion had developed between the circuit courts of appeal as to how the second sentence of Rule 41(b) which reads:

"After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

should be applied by the court in a non-jury case.[1] The Third and Fourth circuits had held that the function of the trial court was to deny a motion to dismiss at the close of plaintiff's evidence, if the evidence would be, in a jury case, sufficient to take the case to the jury and although the court as trier of the facts would find against the plaintiff on the evidence.[2] The Sixth, Seventh and Ninth circuits had held that the question was not whether there was sufficient proof to take the case to the jury, where trial was before the court only, but that the court, as trier of the facts, should apply its own judgment to the evidence and grant or deny the motion.[3] In 1946 the federal rule was amended by adding what is now the third sentence which reads:

"In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

Since its amendment most of the federal decisions have interpreted the rule as requiring the court to take an unbiased view of all the evidence, giving it such weight as it appears entitled to receive, and decide accordingly.[4] The Third circuit, although it has had occasion to consider the rule twice since its amendment, has specifically stated that it has not as yet passed on the effect of the amendment.[5]

1. Civ.R. 41(b) in its entirety reads:
   "(b) *Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). A dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party does not operate as an adjudication upon the merits. Any other dismissal not provided for in this rule and a dismissal under this subdivision operates as an adjudication upon the merits, unless the court in its order for dismissal otherwise specifies."

2. Federal Deposit Ins. Corp. v. Mason, 115 F.2d 548 (3d Cir. 1940); Whitley v. Powell, 159 F.2d 625 (4th Cir. 1946).

3. Gary Theatre Co. v. Columbia Pictures Corp., 120 F.2d 891 (7th Cir. 1941); Bach v. Friden Calculating Mach. Co., Inc., 148 F.2d 407 (6th Cir. 1945); Barr v. Equitable Life Assurance Society, 149 F.2d 634 (9th Cir. 1945); 5 Moore, Federal Practice § 41.13(4), at 1044; 2B Barron & Holtzoff, Federal Practice & Procedure § 919, at 151.

4. Brahms v. Moore-McCormack Lines, Inc., 133 F.Supp. 283 (S.D.N.Y.1955); Joseph v. Donover Company, Inc., 261 F.2d 812 (9th Cir. 1959); Huber v. American President Lines, Ltd., 240 F.2d 778 (2d Cir. 1957); Penn-Texas Corp. v. Morse et al., 242 F.2d 243, 247 (7th Cir. 1957).

5. Kahn v. Massler, 241 F.2d 47 (3d Cir. 1957); Ettore v. Philco Television

In considering how the rule as amended should have been applied in the case before us we are assuming that the motion for involuntary dismissal was made and granted by the court at the conclusion of plaintiff's evidence and not after the defendants had rested. What actually happened at the trial was that at the conclusion of plaintiff's evidence, counsel for defendants stated that he had no "intention" of calling any witnesses and in the same sentence moved for judgment for the defendants. Counsel for defendants may have felt that presenting his motion in that form gave him a certain psychological advantage but we do not, under the circumstances, consider it sufficient to have been a waiver of the right to present evidence in the event the court had denied the motion after hearing argument from both sides. The procedural point in the trial for waiving the presentation of evidence had not yet arrived and the rule specifically provides that the making of the motion is not a waiver of the right to present evidence. The most that can be attributed to counsel's statement is that it may have reflected his "intention" as of that time, but that it did not amount to a waiver of a basic right. If the motion had been denied and counsel had then announced that he desired to present evidence after all, we believe the court would not have held him to his gratuitous statement in view of the wording of the rule, the circumstances of the case and in the interests of justice.

The question then is what view of the evidence the judge should have taken at this point in the trial to determine whether, " * * * upon the facts and the law plaintiff has shown no right to relief." As we have said, the view of the majority of the federal decisions since the amendment is that the trial judge, as trier of the facts, should proceed at once to weigh the evidence and grant the motion if in his opinion the plaintiff has not proved his case by a preponderance of the evidence. This, even though the defense has not rested, and the judge has yet to hear the evidence to be presented on the other side of the issues. We do not believe the rule should be invariably so applied.

Where plaintiff's proof has failed in some aspect the motion should, of course, be granted. Where plaintiff's proof is overwhelming, application of the rule is made easy and the motion should be denied. But where plaintiff has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that in the latter situation the trial judge should follow the alternative offered by the rule wherein it is provided that he " * * * may decline to render any judgment until the close of all the evidence", and deny the motion. If, after denial of the motion, the defendant declines to present any evidence, the judge must, of course, then exercise his own judgment in applying the law to the facts presented and rule on the motion and decide the case.[6]

Civil Rule 52(a) provides in part that findings of fact made by the trial court in actions tried without a jury shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses. The findings before us are clearly erroneous in several respects and must be set aside.

Finding No. V states in part that "the plaintiff Rogge arrived at the scene of the aforementioned collision on March 11, 1952, some ten, twelve, or more hours subsequent thereto." The opening statement of counsel for plaintiff, while not evidence, places the time of the collision at 11:30 a. m.

Broadcasting Corp., 229 F.2d 481, 484, 58 A.L.R.2d 626 (3d Cir. 1956), cert. denied 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956).

6. For a discussion of this problem read: The Prima Facie Case in Non-Jury Trials by Prof. Roscoe Steffen, 27 U. Chi.L.Rev. 94 (1959).

March 10, 1952. Counsel for defendants' opening statement fixed the time of collision at 11:30 a. m. on the same date. The witness Rogge testified that he arrived at the scene at about 8:30 a. m. of the following day. Counsel for defendants in his summation fixed the arrival of Rogge at the scene as 21 hours after the collision. In other parts of the transcript the time interval is fixed at approximately 21 hours. Nowhere in the record is there support for the finding that Rogge arrived at the scene as soon as 10 or 12 hours after the collision.

Finding No. VI states: "The highway at the scene of the collision was narrow, although sufficiently wide for the passage of the aforementioned vehicles; on a slight grade; covered by ice and snow; and some tracks of the vehicles belonging to plaintiff and defendants were discernible in the snow on and along said highway." The finding that "some tracks of the vehicles belonging to plaintiff and defendants were discernible in the snow on and along said highway" is unsupported. Nowhere in the record is there evidence that any tracks in the snow made by defendants' vehicles were discernible. The witness Rogge testified that only the tracks made by the right hand wheels of his trailer were visible in the loose snow on the extreme right hand side of the road facing north where the snow had not been plowed; that the inside or left hand wheels had travelled on hard-packed snow and those tracks were not discernible. These were the only tracks testified to. In his summation, counsel for defendants specifically pointed out that no testimony of tire tracks of defendants' vehicles was in the record.

Finding No. IX to the effect that neither testimony nor evidence tended to show negligence on the part of defendants was erroneous as will be pointed out later in this opinion.

The record indicates that the trial was commenced and concluded on August 15, 1960, but that findings of fact were not prepared and served until November 16, 1960. The findings were drafted by counsel for defendants at the court's request. While in their tentative form copies were served on counsel for plaintiff 7 days before their adoption by the court with minor interlined corrections. No objection to the findings was made by counsel for plaintiff as provided for by Rule 78(b).

■ We are left with the impression that the findings were hastily drawn by counsel for defendants some three months after the trial had been completed and were not given the proper and usual attention by either counsel or the court. For example, neither in its oral opinion nor findings did the court comment on the credibility of the witnesses Rogge and Farmer. It accepted as fact the testimony of Rogge as to the icy condition of the roadway; that the roadway was sufficiently wide to permit the passage of the vehicles and that tracks of plaintiff's vehicles were visible in the snow behind his tractor and trailer. No mention is made of Rogge's testimony that his tractor could not have moved five feet after it collided with defendants' vehicle because of its broken down condition, even though, after objection by counsel for defendants and motion to strike, the court specifically ruled that this particular testimony should not be stricken. There is nothing to indicate that the court considered the testimony of plaintiff's witnesses inherently improbable or biased. In view of these factors we consider the findings not only erroneous in the respects previously noted, but incomplete in the aspect just mentioned.[7] We are of the opin-

7. "The purpose of the requirement that findings of fact and conclusions of law be made by the trial court is (1) to enable the appellate court to determine the grounds upon which the trial court reached its decision; (2) to enable the defeated party to determine whether the case presents a question worthy of consideration by the appellate court; and (3) to spare the appellate court the necessity of searching the record in order to supply findings of fact." Michener v. United States, 177 F.2d 422, 424 (8th Cir. 1949). For a detailed discussion of the trial judge's responsibility to give personal consideration to findings of fact

ion that the court did not disbelieve or discount any of the circumstantial evidence of negligence offered by the witnesses Rogge and Farmer. A great deal of Rogge's testimony was corroborated by Farmer. None of their testimony was contradicted and much of it was included in the findings of fact.

■ We endorse generally the rule that a trial court should not reject uncontradicted and unimpeached testimony unless the testimony was inherently improbable.[8] Nor should the testimony of a party to the case, or an employee of a party, be disregarded, discounted or considered inherently improbable or suspicious in the absence of conflicting proof, or of circumstances justifying doubt as to the truth.[9]

As nearly as we can determine no appellate court has been presented with the factual situation before us. In Layton v. Healy et al.[10] there was apparently no reliable evidence which would determine the relative positions of the vehicles at the time of the collision. From the damage to the front end of each vehicle it seemed obvious that the drivers were proceeding in opposite directions. There were no visible marks or debris on the pavement to assist in determining the point of collision and the court held that there was no basis to infer the negligence alleged by the plaintiff, deceased's administrator. In Weaver v. Windust[11] the court held that although on a motion for non-suit the court may weigh the evidence and determine whether, at that point, the burden of proof had been sustained, it cannot assume facts not sustained by the evidence. In granting a non-suit the trial court had assumed that defendant had not been negligent in skidding into the oncoming traffic lane since no direct evidence of negligence had been introduced. In reversing, the court stated that the mere fact that defendant was driving on the wrong side of the highway at the time of the collision required that he excuse or explain the presence of his car in such a position. In Scott v. Mackey[12] the court upheld an instruction to the effect that if defendant's automobile was on the wrong side of the roadway at the time of the collision, this was prima facie a violation of the Vehicle Code and unless excused or justified, would be presumed to be negligent. In Garner v. Myers[13] the trial court was held to have committed reversible error in not instructing the jury that the undisputed fact that defendant was driving on the wrong side of the highway when her car collided with plaintiff's, made out a prima facie case for plaintiff and shifted the burden to defendant to produce sufficient evidence to make it appear equally as reasonable that she did so through no fault of her own, citing with approval Kempfer v. Bois.[14]

■ In most of the cases just mentioned there was some direct evidence that the defendants' vehicle was on the wrong side of the highway. In the case before us there was no direct evidence of that fact. There was, however, uncontradicted evidence that plaintiff's vehicle was on its own extreme right hand side of the highway, and had been so located for approximately the last 60 feet of its travel before the collision oc-

and to avoid the mechanical adoption of findings prepared by counsel see United States v. Forness, 125 F.2d 928, 942 (2d Cir. 1942), cert. denied 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942).

8. Benton v. Blair, 228 F.2d 55, 58 (5th Cir. 1956).

9. Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 35 L.Ed. 501 (1891); Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 214, 51 S.Ct. 453, 75 L.Ed. 983, 987 (1931); Benton v. Blair, supra, note 8.

10. 12 N.J.Super. 549, 79 A.2d 894 (1951).

11. 195 Wash. 240, 80 P.2d 766 (1938); cf. Wellons v. Wiley, 24 Wash.2d 543, 166 P.2d 852, 854 (1946), explaining that in so holding the court was not applying the doctrine of res ipsa loquitur.

12. 159 Cal.App.2d 690, 324 P.2d 703, 708 (1958).

13. 318 P.2d 410, 413 (Okl.1957).

14. 255 Wis. 312, 38 N.W.2d 483, 484 (1949).

curred. The court found that the vehicles actually collided although the highway was wide enough for passing without collision. At the close of plaintiff's case he had established prima facie that his vehicle was not at fault and had raised the presumption that the collision would not have occurred but for the fact that defendants' vehicle was being operated across the center line of the highway in violation of territorial law and highway regulations.[16]

The trial judge observed that the accident could have happened without any negligence and in a number of different ways. We agree. But the evidence that had been produced up to that point in the trial strongly indicated the contrary. The presumption was that the collision couldn't have happened unless defendants' vehicle had been operating across the center line of the highway. This would have been a violation of law requiring adequate explanation to be excused. At the very point in the trial when defendants should have been called upon to present explanatory evidence, they were excused from that obligation.

In their pleadings and opening statement defendants inferred that they would prove that the highway was not wide enough for the two vehicles to pass; that the curve and terrain restricted visibility; that defendants' driver hugged a rock bluff and gave up the rest of the highway to plaintiff's driver, but that because of the narrow-

ness and icy condition of the highway, the vehicles collided nevertheless. Defendants' affirmative views on the cause of the accident would seem to indicate that they intended to present evidence if required to do so. However, our conclusion in this case would be no different even if they had actually intended to waive the presentation of evidence when they made their motion. Plaintiff's case was sufficiently strong to warrant a judgment in his favor.

The findings and judgment are set aside and the case is remanded for the purpose of completing the trial. If the defendants decline to offer any evidence after the denial of their motion for involuntary dismissal, judgment shall be entered for plaintiff.

AREND, Justice (dissenting).

My brothers seem to base the result they have reached upon two rulings, either one of which would be dispositive of the case: (1) Rule 41(b) does not permit a trial court in a non-jury case to dismiss a plaintiff's action, before the defendant has rested, in instances in which the plaintiff has made out a prima facie case. (2) The trial court in this case committed clear error when it found that the plaintiffs had failed to prove their case by a preponderance of the evidence.

I cannot agree with either ruling. In my opinion the judgment should be affirmed.

---

16. At the time of the collision applicable territorial law and regulations governing vehicles meeting on the highway stated:
"§ 50-4-1. Keeping to right of highway. Whenever any persons operating any vehicles shall meet upon any public highway in the Territory, the persons so meeting shall reasonably turn their vehicles to the right of the center of the road, so as to permit each vehicle to pass without interfering with or inter-
rupting the other. (L.1943, ch. 34, § 1, p. 108, effective March 23, 1943.)"
"*Sec. 44.* Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway." (Alaska Traffic Regulations, Approved 1949, Territorial Board of Road Commissioners issued pursuant to § 50-1-4 A.C.L.A.1949, the Alaska Highway Traffic Act.)