Samuel L. WOODS, Plaintiff-Appellant,

v.

**NORTH AMERICAN ROCKWELL COR-
PORATION, a corporation, and Local
952, International Union, United Auto-
mobile, Aerospace and Agricultural Im-
plement Workers of America (UAW),
Defendants-Appellees.**

No. 72–1064.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 23, 1972.

Decided June 25, 1973.

Brenda M. Robinson, Tulsa, Okl. (Goodwin & Goodwin, Tulsa, Okl., on the brief), for plaintiff-appellant.

Charles C. Ivie, Los Angeles, Cal. (Stephen E. Tallent, Los Angeles, Cal., James O. Ellison, of Boone, Ellison & Smith, Tulsa, Okl., and Gibson, Dunn & Crutcher, Los Angeles, Cal., of counsel, on the brief), for defendant-appellee, North American Rockwell Corp.

James E. Youngdahl, Little Rock, Ark. (Youngdahl, Sizemore, Brewer, Forster & Uhlig, Little Rock, Ark., on the brief), for defendant-appellee, International Union.

Before BARNES,[*] HOLLOWAY and McWILLIAMS, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellant Woods, a black worker, brought suit under Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e-5, for alleged racial discrimination practiced against him in his employment. The complaint sought damages against the employer, appellee North American Rockwell Corporation (the company) and Local 952, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W. (the Union). Equitable relief was also sought for reinstatement of Woods, retroactively at a promotion level, among other things.

The complaint alleged that Woods had been denied promotion, had been harassed and mistreated and eventually discharged by the company, all on account of his race. It averred that Woods had requested the union to obtain his reinstatement and charged the union with wrongful discrimination by failing to do so.

The case was tried to the court: At the close of the plaintiff's proof both defendants moved for dismissal of the action under Rule 41(b) F.R.Civ.P. Both motions were granted. An opinion was subsequently filed finding that no racial or other discrimination was shown and an order of dismissal was entered under Rule 41. We conclude that the findings are supported by the record and properly premised the judgment of dismissal, and affirm.

On appeal Woods essentially contends that he sustained his burden of showing discrimination by introducing a test he was made to take. He says that even though he was top man on the seniority list a white man with less seniority was promoted. Woods also argues that he sustained his burden of proof by introducing evidence of incidents of harassment by the company, culminating in his dismissal. In support of his claims against the company Woods relies mainly on Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. And he contends that he sustained his burden of proof of discrimination against the union by showing that it failed to process his grievance in accordance with the collective bargaining agreement.

▮▮ At the outset we must focus on the effect of the trial court's dismissal under Rule 41(b). Woods argues that the dismissal was improper because a prima facie case had been made.[1] However, the ruling was not one granting a directed verdict. In a case tried

---

[*] Honorable Stanley N. Barnes of the Ninth Circuit, sitting by designation.

1. We discuss below again a related point as to whether the plaintiff Woods established a prima facie case calling on the company to establish that the test was not unlawful.

without a jury, the trial court is not required to consider the evidence in the light most favorable to the plaintiff in determining whether to grant a motion to dismiss under Rule 41 made at the completion of the plaintiff's case. Emerson Electric Co. v. Farmer, 427 F.2d 1082 (5th Cir.); Ellis v. Carter, 328 F.2d 573 (9th Cir.); O'Brien v. Westinghouse Electric Corp., 293 F.2d 1 (3d Cir.); Penn-Texas Corp. v. Morse, 242 F.2d 243 (7th Cir.). In this case the court rendered judgment against the plaintiff at that point and later entered findings as provided in Rule 52(a), as required by Rule 41(b). In such circumstances we must view the findings in the same way as those entered at the close of all the evidence, determining only whether they are clearly erroneous. Simpson v. United States, 454 F.2d 691 (6th Cir.); Weissinger v. United States, 423 F.2d 795, 798 (5th Cir.); B's Co., Inc. v. B. P. Barber & Associates, Inc., 391 F.2d 130 (4th Cir.); Penn-Texas v. Morse, supra.

On the merits we turn first to Woods' argument based on Griggs v. Duke Power Co. There the Supreme Court stated the issue before it thusly, 401 U.S. at 425–426, 91 S.Ct. at 851:

"[W]hether an employer is prohibited by the Civil Rights Act of 1964, Title VII, from requiring a high school education or passing of a standardized general intelligence test as a condition of employment in or transfer to jobs when (a) neither standard is shown to be significantly related to successful job performance, (b) both requirements operate to disqualify Negroes at a substantially higher rate than white applicants, and (c) the jobs in question formerly had been filled only by white employees as part of a longstanding practice of giving preference to whites."

The Supreme Court concluded that the employer's practice on educational and test requirements was unlawful. The requirement imposed by the statute was stated clearly by the Court, 401 U.S. at 431, 91 S.Ct. at 853:

"What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

■ We are satisfied that the record supports the trial court's findings that no discrimination was shown. The record does show without dispute that a departmental promotion test was given to Woods. And, of course, since the motions to dismiss were granted no showing was undertaken by the defendants that the test was in any way related to the job to which Woods sought promotion. The company admitted in answering interrogatories that none of the questions on the test related to the duties of "Burr Machine Lead Man" which was the position in question. As to seniority, Woods testified that the white employee promoted to the lead man job was employed about a week after Woods was hired, and in the pretrial order it had been stipulated that the white employee had one day less of seniority than Woods.

However there was no proof by Woods that the test given was the basis of his being denied the promotion or his subsequent discharge. And of critical importance under the Civil Rights Act, there was no substantial proof that the test was intended to be used for racial discrimination, nor that it produced such a discriminatory result.[2] See *Griggs*, supra at 432, 91 S.Ct. 424. This court has dealt with the burden resting on the

---

**2.** We do note that the company's answers to interrogatories stated that in the two years through the filing of Woods' grievance, four men held the lead man position, and no black man ever held the job. One black man who took a lead man test was offered the position and declined it some time in 1968, 1969 or 1970. It was not established whether the test he took was the same one given to Woods.

plaintiff in Spurlock v. United Airlines, Inc., 475 F.2d 216, 218 (10th Cir.):

"Thus, when a plaintiff is claiming that the criteria used by a company in screening job applicants discriminate against a minority group, he need only establish that the use of such criteria has a discriminatory *result*. Griggs v. Duke Power Co., *supra*. It is not necessary to prove a discriminatory intent but only that the discriminatory criteria were used deliberately, not accidentally. Jones v. Lee Way Motor Freight, Inc., 10 Cir., 431 F.2d 245, cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237."

See also Cooper v. Allen, 467 F.2d 836, 838 (5th Cir.); Stevenson v. International Paper Company, 352 F.Supp. 230, 249 (S.D.Ala.); cf. Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245, 249 (10th Cir.), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237.

Under these standards the record supports the trial court's finding. Woods' proof did not show that the test operated discriminatorily on the basis of race or color. See *Griggs*, supra, 401 U.S. at 429, 431, 91 S.Ct. 424. No prima facie case of such discrimination was established as in Spurlock v. United Airlines, Inc., 475 F.2d supra at 218.[3] Therefore the company was not called on to show that the test fulfilled a genuine business need and was permissible under § 703(h) of the Act, 42 U.S.C.A. § 2000e-2(h). See *Griggs*, supra, 401 U.S. at 432, 91 S.Ct. 424. The record amply supports the court's finding that the plaintiff failed to establish that the company engaged in any racially discriminatory employment practice.

■ Woods also argues that his proof shows that the company failed to maintain an environment free of racial discrimination. He says that the termina-

tion of his employment was in reprisal for his having filed a grievance against the company when he was denied the promotion to lead man, and that the company permitted him to be subjected to continuous harassment and discriminatory treatment by his white supervisor.

Woods points to his evidence that he was not given the promotion to lead man, although he had one day more of seniority than the white man who was promoted; that he was fired after he refused several times to sign a lost time card; that he had been given 25 penalty points although he took no longer than others who had done the same job, which points were later admitted to be unjustified and removed; and that he was timed for breaks taken.

Nevertheless Woods' proof established no racial connection with any of the matters complained of. His testimony showed he was fired after refusing to sign the lost time card, following requests to do so on three consecutive days. In his testimony he admitted failing to appear for work for the overtime in question, although he had agreed to do so. And another black witness for Woods testified that he was asked to take the job of lead man, which he declined because he could not be guaranteed a return to his old job if the new position were unsatisfactory.

Again considering all the proof offered by the plaintiff against the company, we are satisfied that the trial court's finding is amply supported.

Woods also argues that his evidence made a case against the union. He says the union had a duty not to discriminate against members on the basis of race; that it was obligated to take whatever lawful steps were needed to alleviate discrimination and its effects on one or all black members; and that the question

---

3. The "prima facie" case referred to in Spurlock v. United Airlines, Inc., and here means the establishment of the fact of a discriminatory result by persuasive proof, which then requires the company to show a business necessity justification for the test. Cf. Ammons

v. Zia Co., 448 F.2d 117, 119 (10th Cir.). This persuasive proof is not merely a prima facie case to survive a motion to dismiss in a case tried to a jury. See IX J. Wigmore, Evidence § 2494 (3d ed.); cf. Howze v. United States, 409 F.2d 27, 28 n. 1 (9th Cir.).

whether the union was guilty of discriminatory practices on the basis of race was one of fact, relying on Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; United States v. Bethlehem Steel Corp., 312 F. Supp. 977 (W.D.N.Y.), modified, 446 F. 2d 652 (2d Cir.); and United States v. H. K. Porter Co., 296 F.Supp. 40 (N.D. Ala.).

■■ The union's statutory duty of fair representation developed in a series of cases involving alleged racial discrimination by unions. See Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L. Ed.2d 842, and cases there cited. Under the doctrine the union's statutory authority as the exclusive agent to represent all members of a designated unit includes the duty to serve the interests of all without hostility or discrimination and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Vaca, supra at 177, 87 S.Ct. 903; Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L. Ed.2d 370. And these duties include processing grievances in good faith under the collective bargaining agreement. Humphrey v. Moore, supra at 343, 84 S. Ct. 363.

■■ However the claim of breach of the duty of fair representation must be measured by the standards whether the union's action was arbitrary, discriminatory or in bad faith, Vaca, supra, 386 U.S. at 190, 87 S.Ct. 903; Patterson v. Tulsa Local No. 513, 446 F.2d 205, 210 (10th Cir.), cert. denied, 405 U.S. 976, 92 S.Ct. 1202, 31 L.Ed.2d 251, and whether there is fraud, deceit, dishonest conduct, or discrimination that is intentional, severe, and unrelated to legitimate union activities. Motor Coach Employees v. Lockridge, 403 U.S. 274, 299, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473; Reid v. International Union, 479 F.2d 517 (10th Cir., 1973). Moreover the union is not liable for damages attributable solely to the employer's breach and is chargeable only for increases, if any, in damages caused by the union's failure to represent the employee properly. Vaca, supra, 386 U.S. at 197–198, 87 S.Ct. 903.

■ Woods points to the union's failure to procure his reinstatement and to process, for more than two steps, his grievance filed in response to the company's promotion of the white employee to the lead man position. There was, however, no showing that the union acted without justification. In fact there is no proof that Woods requested the union to take further action than it did on his behalf. Under the agreement here, the employee had no absolute right for his grievance to be carried to arbitration, and a breach of the duty of fair representation by the union is not established merely by proof that the underlying grievance was meritorious. Vaca, supra at 195, 87 S.Ct. 903; see also Griffin v. International U., United Automobile, A. & A. I. W., 469 F.2d 181, 183 (4th Cir.); Turner v. Air Transport Dispatchers' Association, 468 F.2d 297, 300 (5th Cir.).

■ The trial court found that the union could not be expected indefinitely to prosecute grievances having no more factual basis than those disclosed by the plaintiff in his testimony. It was also found that his proof failed wholly to establish that the union engaged in any racially discriminatory employment practice. We conclude that the findings are amply supported and not clearly erroneous. They adequately support the conclusion that there was no breach of the statutory duty of fair representation. Motor Coach Employees v. Lockridge, supra, 403 U.S. at 299, 301, 91 S. Ct. 1909; Vaca, supra 386 U.S. at 190, 87 S.Ct. 903.

Affirmed.