WARNER, J.
Appellant, Edward McCabe, filed a will contest alleging that his father lacked the capacity to execute his will, which did not acknowledge his son. After presentation of McCabe’s case in this non-jury trial, the trial court entered an involuntary dismissal and entered judgment for the estate. In doing so, the court weighed the evidence. We reluctantly reverse on the authority of Tillman v. Baskin, 260 So.2d 509 (Fla.1972).
McCabe’s father, the decedent, was an admitted alcoholic. He moved away from his wife a week after McCabe was born in 1952. Contact between the decedent and his wife and child was sporadic during the 1960’s and 70’s, and it thereafter ceased. The decedent moved to Palm Beach and worked as an alcohol and drug abuse counselor. In 1994, the decedent approached his friend, attorney Chris Schilling, about executing a will. Schilling drafted the will at no charge and, assuming the decedent had no wife or children, included a boilerplate clause stating, “I have never been married and I have no children, living or deceased.” The will provided nothing for McCabe and left the entire estate in trust for the benefit of recovering alcoholics and drug addicts. Two codicils were subsequently executed in 1995 and 1997, incorporating the provisions of the will.
In 1996, before the second codicil was executed, McCabe located the decedent and visited him unannounced. After initially refusing to come to the door, the decedent ended up spending several days *1055 with his son and introduced him to relatives as his son. They corresponded over the next several months. The decedent planned a trip to visit McCabe but can-celled it and cut off contact. Later that year he executed the last codicil incorporating the provisions of his prior will. On many occasions following the execution of the documents, the decedent denied he had a son.
Upon the decedent’s death in 2002, McCabe filed a petition to revoke probate of the will, challenging the testamentary documents on the ground that the decedent was subject to an insane delusion involving a natural object of his bounty, i.e., his son. McCabe alleged that the decedent was physically weak and mentally tired, and he adhered to the delusion that he had no children in the face of evidence to the contrary.
The case proceeded to trial. McCabe testified as to the foregoing facts. The decedent’s niece testified that decedent knew he had a son but would never take responsibility for the family. He made a willful choice to keep the fact that he had a son a secret.
McCabe also presented an expert psychiatric witness, Dr. Norman Silversmith. Dr. Silversmith testified that, to a reasonable degree of psychiatric certainty, the decedent suffered from a long-standing fixed false belief, an insane delusion, that overrode his capacity to recognize his son.
Without detailing all of Dr. Silversmith’s opinions, many were unsubstantiated and filled with contradictions. He did not interview McCabe or the attorney who drew the will and codicils. On cross-examination, counsel severely discredited Dr. Silversmith’s opinions.
After McCabe rested, the estate moved for involuntary dismissal and to strike the testimony of Dr. Silversmith. It first argued the motion for involuntary dismissal, and, for the sake of time, the court granted an involuntary dismissal, concluding that there was no evidence other than Dr. Silversmith’s opinion that the decedent was suffering from an insane delusion at the time he executed his will and codicils. As to Dr. Silversmith’s testimony, the court noted that it would have stricken the testimony had it been requested pre-trial, because it was not predicated on adequate and complete facts and was unsupported by any reasonable interpretation of the facts. Subsequently, the court entered judgment for the estate, and McCabe appeals.
McCabe argues the lower court erred in entering an involuntary dismissal because he presented a prima facie case that the decedent suffered from an insane delusion as to the natural object of his bounty and thus lacked testamentary capacity to execute his will and codicils. “An involuntary dismissal or directed verdict is properly entered only when the evidence considered in the light most favorable to the non-moving party fails to establish a prima facie case on the non-moving party’s claim.” Hack v. Estate of Helling, 811 So.2d 822, 825 (Fla. 5th DCA 2002).
McCabe sought to show that the decedent lacked testamentary capacity because he suffered from an insane delusion. “[A] will should be held invalid for lack of testamentary capacity if it is executed as a result of an insane delusion.” In re Hodtum’s Estate, 267 So.2d 686, 688 (Fla. 2d DCA 1972) (citing In re Estate of Supplee, 247 So.2d 488 (Fla. 2d DCA 1971)). An insane delusion is a “spontaneous conception and acceptance as a fact, of that which has no real existence adhered to against all evidence and reason.” In re Estate of Edwards, 433 So.2d 1349, 1351 (Fla. 5th DCA 1983).
*1056 The only evidence in the case that supported a conclusion that the decedent suffered an insane delusion was the testimony of Dr. Silversmith. None of the other evidence rose to a level to establish a prima facie case because the decedent did not persistently deny the existence of his son. In fact, he admitted it not only to McCabe himself but to many family members.
Despite the fact that the court thought that Dr. Silversmith’s testimony was not based on adequate facts or any reasonable interpretation of the facts, the testimony was never stricken. When the court admits testimony, it must weigh the testimony and is not free to disregard it as inadmissible. See Southeastern Fire Ins. Co. v. King’s Way Mortg. Co., 481 So.2d 530, 531 (Fla. 3d DCA 1985). Therefore, Dr. Silversmith’s testimony was part of the prima facie case.
Tillman v. Baskin, 260 So.2d 509, 511-12 (Fla.1972), holds that, even in a non-jury case, a trial court cannot weigh evidence in ruling on a motion for involuntary dismissal at the close of the plaintiffs case but must deny the motion when a prima facie case is made. In Tillman, the court adopted the opinion of the Supreme Court of Alaska in Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962). See 260 So.2d at 511. However, in Rogge the court said:
But where plaintiff has presented a pri-ma facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof.
368 P.2d at 813 (emphasis added). Tillman did not limit its holding to cases where plaintiff made a prima facie case with unimpeached evidence. Thus, Tillman is more limiting to the trial court than the Rogge rule.[1]
In granting the involuntary dismissal, the trial court weighed the testimony of Dr. Silversmith.[2] This violates the rule of Tillman. Had the rule as announced in Rogge applied, we could affirm, because Silversmith’s testimony was severely impeached and essentially unbelievable. Because Tillman did not except cases in which the prima facie evidence is impeached, we must reluctantly reverse. We direct that this case continue before the same trial judge, if possible, in order to avoid the time and expense of a new trial. That way, the court having heard the original trial can essentially take up where it left off. The defense will be allowed to present a case, if it chooses, and then the trial court can rule at the close of all the evidence, at which time it can weigh all of the testimony presented. This is not unfair to McCabe. If it is not possible that the same judge hear this case, then a new trial is ordered.
Reversed and remanded for further proceedings.
STONE, J., concurs.
BRYAN, BEN L., JR., Associate Judge, dissents with opinion.

. We also note that the Alaska position adopted by Florida is the minority view and has been followed only in Wyoming. See Matter of Marriage of Castro, 51 Or.App. 707, 626 P.2d 950 (1981).

. The dissent’s quote from the trial judge indicates that no further testimony was expected from the appellees (respondents). However, respondents did not make any such representation and earlier in the trial indicated their intent to call some witnesses should their motion be denied.