GARY THEATRE CO. v. COLUMBIA
PICTURES CORPORATION et al.
No. 7468.

Circuit Court of Appeals, Seventh Circuit.
June 11, 1941.

892

A. W. Gavit, of Gary, Ind., and Sigmund David, of Chicago, Ill., for appellant.

Vincent O'Brien, Frederic Burnham, Herbert M. Lautman, David Levinson, and Samuel R. Rosenthal, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff sued to enjoin defendants' practice in distributing motion picture films, charging violation of the Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. Upon trial, after plaintiff had rested, the court, sustaining defendants' motion, entered judgment dismissing the complaint for want of equity. Plaintiff appeals, asserting that the only question properly before us is whether plaintiff made a prima facie case. Defendants insist that the adjudication was upon the merits and that our question is whether the evidence was sufficient to show a violation of the Act.

The procedural question, we think, is settled by Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c: "Involuntary Dismissal: Effect Thereof. * * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

The case was tried without a jury and the court entered special findings of fact as contemplated by Rule 52(a): "In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Under Rule 41(b) the judgment, supported by findings, was an adjudication upon the merits, inasmuch as defendants moved for dismissal upon the ground that, upon the facts and the law, plaintiff had shown no right to relief. Consequently our question is whether the findings are supported by the evidence. Under Rule 52(a) we can not set them aside unless they are clearly erroneous, and, by the same token we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses.

The alleged violation of the Congressional Act is based upon evidence substantially as follows: All defendants except two are distributors of socalled feature motion picture films. The other two, Balaban & Katz Corporation and Warner Brothers Picture Management Corporation, are exhibitors operating picture theatres in Chicago and elsewhere. Plaintiff, owner of the Palace Theatre in Gary, Indiana, and there

exhibiting moving pictures, questions validity of a prevailing practice in the industry whereby copyrighted films are licensed to exhibitors under written contracts containing express provisions governing "priority of run and clearance." Films are licensed for "successive runs," each of which consists of showing at one theatre or simultaneously in two or more theatres in a given competitive area. There are some 10,000 theatres in the United States and the distributors have only from 200 to 400 prints of each film to allot to them. As a consequence, there has arisen a system of priority whereby a theatre licensed to exhibit a film earlier than others is said to have "priority of run." By virtue of the restrictive clauses of the license agreements, a specified period of time must elapse between the end of the first run and the beginning of a succeeding one, this period being known as the "clearance" which the first theatre has over the second. This practice controlling respective priorities and clearances has arisen naturally in promotion of sales and, in the words of plaintiff's representative, came about "as a natural consequence of details between distributor and exhibitor * * * is justifiable, fair and reasonable to further the industry and carry on distribution and exhibition, * * * useful and beneficial * * * both to the distributor and exhibitor." The parties agree, therefore, that the practice does not pro forma create unreasonable discrimination against unimpeded distribution in interstate commerce in violation of the Sherman Act, but they are in sad disagreement as to whether the facts here prove violation.

Plaintiff's theatre in Gary is subject to a clearance practice expressly recognized in its contract with each of defendant distributors, against which, however, it has protested, whereby the distributors license for first run certain Chicago loop theatres, then refuse to permit exhibition of the film for three weeks after conclusion of the first run and then release it to theatres in Chicago known as "A Pre-Release Houses," including some five on the south side of Chicago, all of which are affiliates of either defendant Balaban & Katz or defendant Warner Brothers. At the close of a three weeks run in the "A" theatres, plaintiff for the first time is eligible to receive the film for exhibition in Gary. At the time when plaintiff becomes entitled to show the film, a great number of "B"

theatres in Chicago, under their contracts likewise become eligible to exhibit it.

Plaintiff's theatre is comparable in size, equipment and other respects to the "A" theatres. It is located just over the state line in Gary, a city of 100,000. Intervening between Gary and Chicago are Hammond and Whiting, both Indiana municipalities. The population from Gary to the center of the loop in Chicago is urban in character, one civic community extending into the other. Transportation from Gary to the south side of Chicago requires from thirty to forty-five minutes. Thus, both parties admit that, so far as priority runs are concerned, Gary is in direct competition with the "A" theatres on the south side of Chicago. Located similarly to plaintiff's theatre are houses of equal equipment and character in Hammond and Whiting, each of which is subject to the same restrictions as plaintiff and, so far as priority of run is concerned, on a par with Gary.

This system of clearance and priority abides throughout the metropolitan district. It does not extend beyond Gary where the population becomes more agrarian in character and the country more sparsely populated. As a consequence, such towns as Michigan City, Valparaiso and Chesterton, lying beyond the metropolitan area, are not bound by the same restrictions and are allowed to and frequently do exhibit films three or four weeks earlier than Gary.

From these facts, plaintiff argues that films carried from Chicago to Gary are effectively restrained in commerce for a period of at least seven weeks from the time of the first run in the Chicago loop; that its theatre is in direct competition with "A" theatres on the south side of Chicago and with theatres in neighboring cities to the east; that to prevent plaintiff from receiving films at least as early as they are received by "A" theatres is an unreasonable discrimination, resulting from a conspiracy condemned by the Sherman Act, and that, even if there be no conspiracy, the contracts themselves work a violation of the law.

The court entered extended findings of fact. It found that the copyrighted films are commonly licensed, subject to the established rules of clearance and priority, for successive runs; that, in general, license fees paid to distributors for prior runs produce greater revenue than subsequent runs in the same area; that the distributor attempts to license each successive

run to such theatre as by reason of size, location, equipment, prestige, price, management and business policies is in position to earn and pay the highest fees; that the existing practices are usual, customary and necessary for economically sound distribution and exhibition of films and beneficial both to distributor and exhibitor; that the practice was not arrived at or maintained because of any conspiracy, understanding, agreement or combination but resulted naturally from business considerations and from separate negotiations between each distributor and exhibitor in free and open competition with the others; that plaintiff has consistently obtained clearance over "second-runs" in Gary and the neighboring towns of Crown Point, Hobart and Hebron; that under all the circumstances, including many that we have not related, the practice, in so far as plaintiff is concerned, is reasonable in extent and degree; that there was no intent to maintain a monopoly, to obstruct full and natural flow of films in interstate commerce, to suppress or eliminate competition, unreasonably to restrain trade or to regulate or control prices and that none of the license agreements had any such effect; that no advantage would result to plaintiff if it obtained shorter clearance and priority of runs but that on the contrary it might be injured and damaged. The court concluded as a matter of law that defendants had not conspired; that the practice and contracts were lawful and reasonable.

■ Under the Act, 15 U.S.C.A. § 1, every contract or conspiracy in restraint of commerce amongst the several states is illegal. Whether a conspiracy exists is a question of ultimate fact but whether the facts bring defendants within the prohibition of the statute is a question of law. Obviously it is not necessary, in order to establish a conspiracy, to have direct evidence of a formal contract. Determination of existence or non-existence of conspiracy involves questions of fact to be determined from all the circumstances in evidence. Whether the trial tribunal be jury or judge, the inferences to be drawn from the facts and circumstances submitted and whether in any particular case the facts justify the ultimate findings are questions for such tribunal subject to revision for error of law. Where parties may differ as to the correct solution of the factual problem faced, it is the duty of a court of review to refrain from attempting to substitute its findings for those of the trial court. It matters not that we might have arrived at a conclusion at variance with that of the trial court. Where as here the trial tribunal has observed the witnesses and made voluminous detailed findings supported by substantial evidence, we are unable to say that the situation contemplated by the rule,—that the findings are clearly erroneous,—is presented. The court has expressly found that there was no conspiracy. We can not say as a matter of law that this is untrue.

■ But, says the plaintiff, even though no conspiracy was proved, the restrictive provisions of the several contracts and the result thereof in practice, did in fact work an unreasonable restraint of interstate commerce to the injury of the public and of the plaintiff in an arbitrary discrimination in distribution of films, as between plaintiff and the Chicago "A" theatres on the one hand and between plaintiff and its neighboring competitors to the east in Indiana on the other. Here again we are dealing largely with questions of fact. That there was some restriction, some delay in interstate commerce, as a result of the practice, is apparent; but the question is whether, under all the facts and circumstances, that restriction, that impediment, is of that unreasonable character prohibited by Congress. "To sustain the restraint, it must be found to be reasonable both with respect to the public and to the parties, and that it is limited to what is fairly necessary, in the circumstances of the particular case, for the protection of the covenantee. * * * The question is whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is, or is not, unreasonable. * * * It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable, —reasonable, that is, in reference to the interests of the parties concerned, and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favor it is imposed, while at the same time it is in no way injurious to the public." Dr. Miles Medical Co. v. Park & Sons Co., 220 U.S. 373 at 406, 407, 31 S.Ct. 376, 384, 55 L.Ed. 502. As Mr. Justice Holmes commented in his dissenting opinion: "The most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear."

The court considered this question in the light of all the evidence. It considered the testimony offered by plaintiff itself to the effect that the practice in general was essential and beneficial and that as a beneficiary under it, plaintiff enjoyed certain advantages over other exhibitors. The court appreciated plaintiff's contention that the immediate question was whether the practice was unreasonable under the particular facts involved. It concluded from all the testimony, documentary exhibits and circumstances presented that there was no unreasonable restriction. This again was a question of ultimate fact, one to be resolved with the statutory provisions in mind, from consideration of the direct and indirect evidence submitted, and again we feel that it would be improper for us to say as a matter of law the court was wrong, even though we believed a variant finding proper. In the words of Mr. Justice Brandeis in Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 244, 62 L.Ed. 683, Ann.Cas.1918D, 1207: "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts."

If we were not confronted by a positive finding, supported by substantial evidence, we would, in view of the evidence, be powerless to interfere. In that situation the following words of the Supreme Court, in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 393, 77 L.Ed. 819 would control: "We, therefore, have a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover."

Plaintiff relies upon Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610. There the court in addition to finding a combination, found that a price restriction was attempted to be enforced comparable in effect with retail price maintenance agreements universally recognized as unreasonable restraints.

To determine the question in favor of plaintiff would necessitate the substitution of our judgment upon facts for that of the trial court. It would require us to hold either as a matter of law that a conspiracy had been established or that the priority of runs and clearance practice whereby plaintiff was placed in the same category as the "B" theatres in south Chicago created as a matter of law an unreasonable restriction in interstate commerce. This we do not believe we are justified in doing.

The judgment is affirmed.