Minerva H. SANDERS, Plaintiff,

v.

GENERAL SERVICES ADMINISTRATION, et al., Defendants.

No. 80 C 1160.

United States District Court, N. D. Illinois, E. D.

Jan. 12, 1982.

Mary R. Turner, Turner, Ward & Associates, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty. by Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This case came on for trial on March 2, 1981. The plaintiff has presented all evidence in support of her claim that she was discriminated against in her employment with the General Services Administration (GSA) on the basis of her race and sex. After the plaintiff rested her case, the defendant moved for involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The court denied the motion from the bench and the defendant then called three witnesses. At the end of the first day at trial, the court adjourned the trial until May 8, 1981. On May 8, 1981, the court was informed that plaintiff's attorney would be unable to appear to represent the plaintiff because of illness. The court continued the trial to May 29, 1981.

Since May 8, 1981, the court has carefully reviewed its notes relating to plaintiff's testimony as well as the verbatim transcript of plaintiff's testimony and the exhibits introduced at trial. The court has reached the conclusion that it was in error in not granting defendant's motion to dismiss at the close of plaintiff's case. Therefore the court is entering this order of dismissal pursuant to Rule 41(b).[1] After careful consideration, the court can see no reason to require the appearance of the parties, witnesses, and the attorneys for further hearing since this court simply has not been persuaded that plaintiff's race or sex was ever a factor in her employment at GSA. *See Weissinger v. United States,* 423 F.2d 795, 797–98 (5th Cir. 1970); *Armour Research Foundation of Illinois Institute of Technology v. Chicago, R. I. & P. R. Co.,* 311 F.2d 493, 494 (7th Cir. 1963). ("A denial of defendant's motion amounts to nothing more than a refusal to enter judgment at that time. At most it constitutes a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it did not preclude the trial judge from later making considered findings and determinations not

---

1. Rule 41(b) provides in pertinent part:

    After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

altogether consistent with his prior tentative ruling.")

The standard to be applied on a motion to dismiss at the close of plaintiff's evidence in a non-jury case is set forth and explained in the Advisory Committee's Note to the 1948 amendments of the civil rules.

> In some cases tried without a jury, where at the close of plaintiff's evidence the defendant moves for dismissal under Rule 41(b) on the ground that plaintiff's evidence is insufficient for recovery, the plaintiff's own evidence may be conflicting or present questions of credibility. In ruling on the defendant's motion, questions arise as to the function of the judge in evaluating the testimony and whether findings should be made if the motion is sustained. Three circuits hold that as the judge is the trier of the fact in such a situation his function is not the same as on a motion to direct a verdict, where the jury is the trier of facts, and that the judge in deciding such a motion in a non-jury case may pass on conflicts of evidence and credibility, and if he performs that function of evaluating the testimony and grants the motion on the merits, findings are required .... *Gary Theatre Co. v. Columbia Pictures Corp.*, 120 F.2d 891 (7th Cir. 1941) .... The added sentence in Rule 41(b) incorporates the view of the Sixth, Seventh and Ninth Circuits.

5 F.R.D. 466.

■ The court is not bound to consider the evidence in a light most favorable to the plaintiff, 5 Moore's Federal Practice § 41.13, n.18 and cases cited therein, rather

> ■n evaluating a Rule 41(b) motion for involuntary dismissal at the close of plaintiff's evidence, the district court is "bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as [the court] believe[s] it entitled to receive."

*Patterson v. General Motors Corp.*, 631 F.2d 476 at 487 (7th Cir. 1980) (*quoting Allied v. Sasser*, 170 F.2d 233, 235 (7th Cir. 1948).

■ This case presents a federal employee's complaint of employment discrimination based on race and sex. The court has jurisdiction over the plaintiff's complaint and the Administrator of the General Services Administration pursuant to 42 U.S.C. § 2000e–16. Pursuant to *Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), this court dismissed all the defendants but Rowland Freeman III, Administrator of GSA. The court does not consider plaintiff's claim for relief pursuant to 42 U.S.C. § 1981 since *Brown* makes it clear that Title VII is plaintiff's exclusive remedy.

The evidence introduced during plaintiff's case in chief shows that plaintiff filed a formal administrative complaint of discrimination with GSA on April 26, 1979 and made the following charges:

> I believe that I have been discriminated against because of my race (Black), sex (Female) and as retaliation of [sic] my involvement in the Carolyn King discrimination complaint since my opinion differed from that of my supervisor.
>
> I have been continually restrained from any involvement in the King complaint from Feb. 8, 1979 to the present date. From Dec. 12, 1978 to Feb. 7, 1979, I have been restrained from "certain" activities relative to the complaint.
>
> I have been harassed, intimidated, and treated extremely unfairly in comparison with Mr. Mario Longario, the Hispanic Employment Manager. In this regard, I have been provided an over-abundance of work assignments which are primarily 'special' or priority items, assigned clerical-type functions, excluded from various EEO activities in the office which directly affect me and for which I am responsible and refrained [sic] from attending meetings relative to the Women's Program while Mr. Longoria is allowed to attend meetings at least once a week.
>
> I have been accused of slanderous acts and have been informed that documentation is being written up on me concerning these acts.

Plaintiff's Exhibit 1, p. 2.

On May 30, 1979 plaintiff filed an addendum to her administrative complaint which

was introduced in evidence during plaintiff's case in chief by stipulation. Exhibit 2 to Government Exhibit A. The complaint was investigated during September and October, 1979 and January, 1980. The report of that investigation with attached exhibits is included in Government Exhibit A.

On March 7, 1980 the plaintiff filed her complaint in this case. On July 8, 1980 GSA advised plaintiff of the results of its investigation of the administrative complaint. Plaintiff's Exhibit 11, Government Exhibit C. (These exhibits were admitted in evidence by stipulation during plaintiff's case in chief).

Minerva Sanders is a black female presently employed by the GSA. Since June 8, 1980 she has been a Customer Relations Specialist, GS–11. She was initially hired by the Region V GSA Office on May 15, 1978 and was assigned to the Equal Employment Opportunity Office as an Equal Opportunity Specialist, GS–9. Ms. Sanders also acted as manager of the Regional Federal Women's Program.

As an EO specialist, Ms. Sanders' duties included providing technical guidance and assistance in equal employment opportunity matters to the management of two GSA regional service offices and one regional staff office. She was also responsible for accumulating and updating data necessary to review compliance with the regional affirmative action plan. She was specifically assigned as the liaison officer to the Public Building Service, the National Archives and Record Service and the Office of Administrative Division. During her service with the Equal Employment Opportunity Office, Ms. Sanders took part in the investigation and processing of at least one employee discrimination complaint at the direction and under the supervision of the head of the EEO office, Mrs. Jeanette Gibson. Mrs. Gibson is also black. At the Equal Employment Opportunity Office for Region V, Mrs. Gibson was in charge of the EEO office and was Ms. Sanders' immediate supervisor. Mrs. Gibson's immediate supervisor was Mrs. Carmel Kernohan, the regional personnel manager. Mrs. Kernohan is white.

Ms. Sanders was one of the two EO specialists assigned to GSA's Region V Office in 1978. The other EO specialist was a Hispanic male, Mr. Mario Longaria. Mr. Longaria's duties were generally the same as Ms. Sanders except that Mr. Longario was the liaison officer for different GSA staff and service offices in Region V and acted as manager of the Regional Hispanic Program.

The plaintiff encountered no difficulties with Mrs. Kernohan or Mrs. Gibson when she started work at GSA. As noted above, it was not until April 26, 1979 that Ms. Sanders filed her administrative complaint of discrimination. That complaint included a ten-page single spaced typewritten "chronological record of the actions taken by Mrs. Jeanette Gibson, Regional EEO officer, and/or Ms. Carmel Kernohan, Regional Personnel Officer that support my allegations." This chronological record contains a detailed recital of thirty-seven separate instances of alleged racial or sexual discrimination occurring between December 12, 1978 and April 25, 1979. However, on the witness stand Ms. Sanders supplemented her charges by recounting two incidents occurring prior to December, 1978.

Ms. Sanders testified that Mrs. Gibson told her on or about October 19, 1978, that "one of the black women that I invited [to speak on a panel at a Women's Week program] had made the comment in the open meeting that 'All black women should stick together,' and she said that Mrs. Kernohan wanted to talk to me about that." Shortly thereafter, the plaintiff, Gibson and Kernohan had a discussion in the EEO office about what was said at the Women's Week program. Ms. Sanders testified that:

[Mrs. Kernohan] mentioned that she was riding up on the elevator the previous day and that a woman brought to her attention a remark made by a black woman on the panel stating that 'All women should stick together,' and I, you know, stated to Mrs. Kernohan that that statement was true. Then she asked me who was the black woman and I mentioned it was Mrs. Lillie English. She asked me what was

Lillie English's position. I mentioned that Lillie English was a chairperson of the Federal Executive Board's Federal Women's Program Committee, and I mentioned that the statement that 'All women should stick together' is one that all of the members were promoting because we felt that women generally were not as supportive of each other as they should be. Mrs. Kernohan then agreed with this statement. In fact, she mentioned the difficulties that she encountered in movement in her professional field. At that time, nothing was said— she did not mention about a black woman made the statement about black women.

Transcript of Trial, pp. 15–16.

Ms. Sanders also testified that on November 17, 1978, she was told by a Mrs. Hearns, a GSA employee who also acted as an EO counselor for one of GSA's regional offices, that Mrs. Gibson had failed to take any action in response to Hearns' complaint about a supervisor's racist behavior. Nothing in the record corroborates this self-serving recital of hearsay. In fact, Ms. Sanders did not call a single witness to corroborate any of her testimony. Most of her testimony consists of the recital of what other people told her about what Mrs. Gibson had said on various occasions.

This court accords no weight to Ms. Sanders' subjective judgments about Mrs. Gibson's motivations. The court believes that Sanders' testimony does not lend the slightest support to an inference that either Mrs. Gibson, a black female, or Mrs. Kernohan, a white female, had the slightest "anti-black, anti-women" bias.

The plaintiff's completely unexplained failure to call a single witness to support any of her charges relating to specific incidents of what she concludes were "anti-black, anti-women" employment decisions by Gibson weighs heavily against this court drawing any inferences favorable to plaintiff's charges.

In *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth an outline of the elements of a *prima facie* case of employment discrimination in a Title VII action.

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824.

In a footnote at the end of the above quoted text the Court recognized that

> [T]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

*Id.* at 802 n.13, 93 S.Ct. at 1824.

In *Furnco Construction Corp. v. Waters*, 438 U.S. 567 at 576–577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the Court stated that the plaintiff's initial burden requires a showing of

> actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the act.

\*　　\*　　\*　　\*　　\*　　\*

The method suggested in *McDonnell-Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate evidence in light of *common experience* as it bears on the critical question of discrimination. A prima facie case under *McDonnell-Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration or impermissible factors. *Team-*

*sters v. United States* [431 U.S. 324] at 358 n.44 [97 S.Ct. 1843, 1866, 52 L.Ed.2d 396]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not that the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race. (emphasis added).

Recently the Court reiterated the reasoning of *Furnco* in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and stated that

[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact *believes* the plaintiff's evidence and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. (emphasis added).

*Id.* at 254, 101 S.Ct. at 1094.

 Establishment of a prima facie case of discrimination gives rise to a legally mandatory, rebuttable presumption which requires that the defendant produce evidence that "the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason." *Id.* at 254, 101 S.Ct. 1094.

In considering the evidence in this case, the court accords Ms. Sanders' judgments about Mrs. Gibson's motivation no weight whatsoever. The court believes that Sanders' testimony does not indicate the slightest likelihood of "anti-black, anti-women" bias on the part of Gibson or Kernohan.

This court did not find Ms. Sanders' testimony credible. Her demeanor on the witness stand left this court with the unshakeable impression that Ms. Sanders' exaggerated events and their significance and that the source of her troubles and disagreements with Mrs. Gibson stemmed from a clash of personalities completely unrelated to the plaintiff's race or sex. Ms. Sanders has offered no believable testimony that Mrs. Gibson treated any other black or female employee in a manner which would indicate bias on her part. The court believes Ms. Sanders tailored her testimony to fit what she believed would establish her case. She even went so far as to state that she "liked" Mrs. Gibson. Her demeanor on the witness stand did not indicate that this statement resulted from politeness or kindness on her part but from a reluctance to admit what was apparent from her testimony, i.e. that she does indeed dislike Mrs. Gibson.

The foregoing memorandum opinion is hereby adopted as findings of fact and conclusions of law in this proceeding. For the reasons stated, defendant's motion to dismiss, pursuant to Rule 41(b), Fed.R.Civ.P., is granted.

IT IS SO ORDERED.